## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JO KATHRYN REAVIS, administrator of the Estate of JAMES CARL COALE, deceased<br>　　　　Plaintiff,<br><br>v.<br><br>(1) BLAKE FROST,<br>　　Individually,<br>(2) DERRELL SUMMERS,<br>　　Individually,<br>(3) R. STEVEN WORLEY,<br>　　In his Official Capacity,<br>　　　　Defendants. | Case No. 17-cv-138-SPS<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, deceased, and files this *Complaint*, and for her causes of action against the Defendants, alleges and states as follows:

## PARTIES

1.　　Plaintiff, Jo Kathryn Reavis ("Reavis") is a resident of Travis County, State of Texas, however, the deceased was a resident of Okfuskee County and Reavis is the duly-appointed administrator of his estate. She was appointed in Okfuskee County District Court, Case No., PB-16-45. Okfuskee County is located within the federal judicial district for the Eastern District of Oklahoma.

2.　　Defendant, R. Steven Worley is the current duly elected Sheriff of Okfuskee County and the final policymaker for the Okfuskee Board of County Commissioners ("the County"), for its law enforcement mechanism the Okfuskee County Sheriff's Department ("OCSD"). Okfuskee County and the Okfuskee County Sheriff's Department were, at all times

1

relevant hereto, a political subdivision of the State of Oklahoma, located in the federal judicial district for the Eastern District of Oklahoma.

3.      Defendant Derrell Summers ("Summers") was, at all times material to this *Complaint*, duly elected Sheriff of Okfuskee County, State of Oklahoma. Summers is being sued in his individual capacity for his personal actions and in his official capacity for his supervisory actions.

4.      Defendant Blake Frost ("Frost") was, at all times material to this *Complaint*, a duly appointed Sheriff's deputy of Okfuskee County, State of Oklahoma. Frost is being sued in his individual capacity.

## JURISDICTION AND VENUE

5.      This is a civil action seeking damages against defendants for committing acts under color of law and depriving James Carl Coale of his rights secured by the Constitution and Laws of the United States.

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

7.      The supplemental, concurrent, and ancillary jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 and § 1367.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Okfuskee County, State of Oklahoma, which is in this District.

# FACTUAL ALLEGATIONS[1]

9. Upon information and belief, on or about November 5, 2016, James Coale was leaving his residence at 107145 North 3750 Road, Okemah, Oklahoma. For some unknown reason, Coale reversed his course and turned his vehicle around as if to return home.

10. At some point, Coale passed Frost. Frost had no lawful reason to attempt to stop Coale.

11. Upon information and belief, Frost was on alert to be on the lookout and detain a possible suspect wanted in connection with a stabbing (who was not James Coale). Frost was south of the Coale residence in his vehicle facing the wrong way in the lane. Frost had stopped his vehicle and exited his patrol unit. Coale, under no indications that he needed to cease his progress, continued back towards his residence and attempted to maneuver around Frost who was walking in the roadway. As Coale passed Frost on the roadway, Frost pulled his duty weapon and began firing into the back of Coale's vehicle including near the back of the driver's side windshield specifically at Coale's head.

12. Frost did not first attempt to use his duty weapon to disable the vehicle's tires or otherwise disable the progress of the vehicle. Instead, Frost intentionally aimed his weapon toward the part of the vehicle wherein he was most likely to cause the death of Coale. In fact, Frost did kill Coale by shooting him in the back of the head. Frost also shot Coale in the posterior of the forearm. Frost did not calculate and fire a limited number of targeted shots to disable Coale's

---

[1] The Oklahoma State Bureau of Investigation conducted an extensive investigation in this case for the purpose of presentment to the District Attorney's Office and the filing (or not) of criminal charges. Many of the allegations contained herein are based upon Plaintiff's independent investigation and the limited facts provided by law enforcement. Plaintiff is not entitled to that report until a subpoena is issued in this federal action. It is anticipated that this complaint will be amended thereafter.

progress, but instead emptied the entire clip of his duty weapon, into Coale and/or his vehicle. After being shot in the back of the head, Coale immediately died and his truck rolled to a stop in a ditch on the east side of North 3750 Road in Okfuskee County, Oklahoma. Upon information and belief, the vehicle sustained only the damage from the gunshots.

13. Upon information and belief, witnesses observed Frost laughing and acting nonchalant in regards to his homicide against Coale. Another officer noted: "you unloaded your whole clip?" to which Frost answered in the affirmative.

14. Upon information and belief, Frost had been hired by the Sheriff's Department despite a lack of proper training and a history of use of excessive force against suspects or detainees. Frost was widely known for a bad temper and quick, reactionary, and incorrect decisionmaking. Despite this available knowledge and the fact that the Sheriff's Department was aware of Frost's past, the Sheriff's Department still hired Frost and became responsible for insuring he was a fit officer prepared to serve the citizens of Okfuskee County in a constitutional manner.

15. Upon information and belief, Frost's actions were unreasonable under the circumstances and his use of force in violation of all standards and protocol for use of force. Upon realization that he fired unlawfully upon Coale, Frost used his position and influence as an officer in the Okfuskee County Sheriff's Department to attempt to invoke misinformation about Coale designed to justify his otherwise unlawful actions. Specifically, Frost falsely claimed that Coale

tried to "run him over" with his vehicle to justify Frost unloading every bullet from his duty weapon.

16.     Even if Coale truly drove his vehicle past Officer Frost and was too close to Frost in the roadway, Frost's use of force in response to Coale's alleged actions were unreasonable and excessive in light of the totality of the circumstances.

17.     During the time of the shooting, Summers assumed responsibility for supervising, hiring, and training deputies, including Frost, to serve the citizens of Okfuskee County including Coale. Summers also assumed responsibility of promulgating, creating, administering, and enforcing, rules and procedures for the Okfuskee County Sheriff's Department that are designed to protect the citizens of Okfuskee County and prevent Coale's constitutional injuries.  Summers personally involved himself in Coale's death by participating in the creation of flawed training protocols, lack of supervision, and tolerance of numerous constitutionally infirm activities of his subordinate deputies including previous instances of unreasonable and excessive force of Okfuskee County deputies and previous specific instances of unreasonable and excessive force. Additionally, Summers exercised control and discretion over these deputies' activities and deputies like these who committed prior instances of excessive force but chose not to address their actions with further training. Further, Summers failed to properly discipline and supervise deputies that engaged in unconstitutional acts. Finally, Summers knew of these violations of citizen's constitutional rights and acquiesced to their continuance.

18.     In the wake of the shooting, the citizens of Okfuskee County elected a new sheriff, R. Steven Worley. Worley is being sued in his official capacity as the current sheriff of Okfuskee County for the actions taken by the Sheriff's office and thereby the County. Worley assumed responsibility for written policies and regulations, informal customs amounting to widespread

practices, and the responsibility to train and supervise OCSD employees when those policies present a known or obvious risk of potentially causing unconstitutional injuries to citizens of Okfuskee County, like Coale.

19. Frost acted in accordance with and under the aforementioned rules, procedures, policies and customs derived from Summers (and now Worley). Frost's actions were a direct and foreseeable result of his training, supervision, lack of oversight, and encouragement from the surrounding policies, rules and procedures.

20. Because of Frost's intentional, malicious actions to Coale as well as the County's and Summer's policies which resulted in Frost's actions, Coale was violently killed by being shot in the back of the head. Coale's family sustained unimaginable grief, mental anguish, suffering, and loss. Coale's family also experienced substantial cost due to funeral expenses and the loss of actual and potential income derived from Coale in the present and in future.

21. Coale's estate presented notice of a claim under the Oklahoma Governmental Tort Claims act to Okfuskee County on or about November 30, 2016. The mandatory ninety (90) day waiting period before denial of a claim is assumed fell on or about March 1, 2017 and has since passed. The County's time for denial of the claim has since passed and their response is deemed as a denial.

## **FIRST CLAIM FOR RELIEF**
*Violation of 42 U.S.C. § 1983 against Frost*

22. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) through twenty-two (21), above, with the same force and effect as if fully set forth herein.

23. Frost intentionally violated Coale's rights to be secure in his person in violation of the Fourth Amendment of the United States Constitution as incorporated to the states by virtue of

the Fourteenth Amendment to the United States Constitution. Frost used excessive and unreasonable force against Coale by shooting him in the back of his head without any warning, notice, or provocation and at a point when Coale was not a threat to Frost. Judging from the perspective of a reasonable officer on the scene, and in light of the facts and circumstances confronting him, Frost acted in an objectively unreasonable manner.

24.     The totality of the circumstances reveal that Frost attempted to effectuate a suspicionless traffic stop, detention, and/or arrest of Coale without having adequate justification to believe that he had committed a crime. Frost responded unreasonably to Coale's alleged failure to stop and discharged his weapon at Coale without adequate provocation and until he had no bullets left in the chamber of his duty weapon. Coale's conduct was not threatening to Frost and Coale was not under notice to stop or desist. Even if Coale's conduct was criminal (to which his Estate vehemently denies), the severity of any allegations cannot be considered a basis for an objectively reasonable officer to use the level of force that Frost utilized. Coale was not facing Frost's direction at the time Frost fired his weapon intending to cause his death or great bodily harm. There was no immediate threat to the safety of Frost or others.

25.     By means of his illegal and unreasonable seizure of the person of Coale, Deputy Frost, intentionally, with malice and deliberate indifference and callous disregard of his rights, deprived Coale of his life without Due Process of Law, thereby depriving him of his rights, privileges and immunities as guaranteed by the Fourth and Fourteenth Amendments to the

Constitution of the United States of America and protected under 42 U.S.C. § 1983 and in violation of 12 O.S. § 1053.

26. The intentional actions of Frost resulted in the harm caused to Coale and were the foreseeable result of his malicious, willful and intentional actions.

27. As a direct and proximate result of Deputy Frost's actions, Coale suffered the loss of his life.

28. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, demands judgment against Frost, for compensatory damages in the amount of $500,000.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. § 1983 Municipal Liability*
*against Okfuskee County Sheriff R. Steven Worley in his Official Capacity*

29. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) thorough twenty-eight (28), above, with the same force and effect as if fully set forth herein.

30. The Sheriff of Okfuskee County is responsible for the promulgation, creation, implementation, and enforcement of the rules, procedures, policies and widespread customs of the Sheriff's department and its employees. At the time of the shooting, Sheriff Summers occupied the office of Okfuskee County Sheriff. R. Steven Worley assumed responsibility for those offices and currently is employed as the duly elected Sheriff for Okfuskee County.

31. The following, among others that will be developed in discovery, informal customs or practices are so persistent and widespread that they are the standard operating procedure for the Okfuskee County Sheriff's Department's law enforcement force:

    a. Officers firing weapons at subjects and suspects without warning or commands being given to obtain compliance with a suspect;

  b. Officers using false, misleading, or deceptive information when excessive force has been used to justify and cover for their actions;

  c. Officers attempting to detain suspects under false pretenses;

  d. Tolerating officers who use unreasonable and excessive force against a subject or suspect;

  e. Tolerating officers who provide false, misleading, or deceptive testimony designed to justify and cover for their actions;

  f. Officers shooting suspects facing away from them; and,

  g. Policies failing to train deputies in regards to what constitutes adequate probable cause to initiate traffic stops.

32. There is an affirmative link between the aforementioned acts and omissions of Defendants and the informal customs or practices of the Okfuskee County Sheriff's Department via their final policymaker Sheriff Worley. The customs or practices are the direct cause in fact of Plaintiff's Constitutional injury.

33. Additionally, the Office of the Okfuskee County Sheriff's Department via current Sheriff R. Steven Worley is responsible for the adequate training and supervision of deputies such as Frost employed by the Okfuskee County Sheriff's Department. The training related to preservation of Constitutional protections and prevention of excessive force are designed to protect the Constitutional rights of subjects and citizens from errors of deputies in the performance of law enforcement duties. Supervision allows for oversight and correction of unconstitutional behavior and practices. The Okfuskee County Sheriff failed to adequately train and/or supervise its officers related to the use of force and on Fourth Amendment protections afforded pursuant to the United States Constitution. There is an obvious need to adequately train and supervise both uniformed

and supervising officers to alleviate the plainly obvious consequence of Fourth and Fourteenth Amendment violations.

34. The failure to train these officers in the proper use of force set into motion the series of events resulting in Coale's deprivation of Constitutional rights. The failure to provide oversight, supervision and discipline for offending conduct is also affirmatively linked to Coale's constitutional injuries and damages.

35. The Okfuskee County Sheriff's Department and its final policymaker Sheriff R. Steven Worley knew and/or should have known it was obvious that the maintenance of the aforementioned actions, inactions and/or omissions would be substantially certain to result in the Constitutional violations such as those suffered by Coale. The Sheriff's office consciously chose to disregard these obvious risks.

36. Poorly trained and improperly supervised officers empowered with deadly weapons present a known and obvious risk of abuse of power and lethal violence to the population of the Okfuskee County. The Okfuskee County Board of County Commissioners and its final policymaker Sheriff Summers (now Sheriff Worley) disregarded the known and obvious risks to citizens like Coale.

37. Deputy Frost acted in accordance with the above-mentioned official formal policies and/or widespread customs of the County or as a result of the failure to be trained, supervised, and/or as a result of being improperly retained, and, in so doing, proximately caused damages incurred by Coale.

38. The Okfuskee County Sheriff's Department enabled and allowed this unconstitutional injury through continued encouragement, ratification and approval of the aforementioned policies, practices and/or customs and lack of training and supervision, in spite of

the known inadequacies and unlawfulness, were each, and collectively, deliberately indifferent to the valuable constitutional rights of individuals like Coale.

39. As a direct and proximate result of the Okfuskee County Sheriff's Department's actions, *Coale* lost his life.

40. Jo Kathryn Reavis, as Administrator of the Estate of James Carl Coale demands judgment against the Okfuskee County Sheriff's Department for compensatory damages in the amount of $500,000.00.

## THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 Supervisory Liability*
*against Okfuskee County Sheriff Summers, Individually*

41. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) thorough forty (40), above, with the same force and effect as if fully set forth herein.

42. Sheriff Summers breached a duty to Coale which was the proximate cause of Coale's injuries. Specifically, Summers personally involved himself in the constitutional violation against Coale by participating in the creation of flawed training protocols and acknowledged tolerance of numerous constitutionally infirm activities of his subordinate officers including (a) deputies firing their weapons at citizens without adequate probable cause, suspicion, provocation, and in circumstances not justifying use of force, (b) deputies attempting to detain or stop citizens without justification, suspicion, or probable cause that they committed a crime, (c) deputies using false, misleading, or deceptive information when excessive force has been used to justify and cover for their actions, (d) officers attempting to detain suspects under false pretenses, and (e) deputies not being properly trained to understand probable cause or reasonable suspicion standards. Additionally, Summers exercised control and discretion over Frost's activities and deputies like

Frost who committed prior instances of excessive force against similarly situated citizens. Further, Summers failed to properly discipline and supervise that engaged in excessive, deadly, or violent force against nonthreatening suspects. Finally, Summers knew of these violations of citizen's constitutional rights and acquiesced in their continuance.

43. Sheriff Summers promulgated, created, implemented, or utilized policies that caused the deprivation of Coale's rights. Summers knew and/or it was obvious that the maintenance of the aforementioned formal policies, practices and/or widespread customs and the failure to train and properly supervise officers would result in the Constitutional violations such as those suffered by Coale. The constitution mandates Summers, in a supervisory role over all officers, to promulgate, create, and/or maintain a series of rules and procedures designed to prevent Coale's unconstitutional injuries.

44. Poorly trained and improperly supervised deputies empowered with deadly weapons presents a known and obvious risk of abuse of power and lethal violence to the population of Okfsukee County. Sheriff Summers disregarded the known and obvious risks to citizens like Coale and acquiesced, enabled, and ratified the actions of Frost.

45. Frost acted in accordance with the above-mentioned rules and procedures from Summers. Alternatively, Frost acted in accordance and as a result of the failure to be trained, supervised, or dismissed, and, in so doing, proximately caused damages incurred by Coale.

46. As a direct and proximate result of the Summers's actions, Coale suffered and died.

47. Jo Kathryn Reavis, as Administrator of the Estate of James Carl Coale demands judgment against Summers for compensatory damages in the amount of $500,000.00.

**FOURTH CLAIM FOR RELIEF**
*Wrongful Death in violation of 12 O.S. § 1053
against Okfuskee County Sheriff's Department*

48. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) thorough forty-seven (47), above, with the same force and effect as if fully set forth herein.

49. Coale, alternatively and at a minimum, died at the hands of a Sheriff's deputy employed by the Okfuskee County Sheriff's Department while that deputy negligently, recklessly or intentionally handled a firearm that shot and killed Coale. Coale's death was entirely preventable but for the negligent and/or reckless failures experienced by Coale at the hands of the Okfuskee County Sheriff's Department.

50. Coale suffered immensely and died due to the conduct of Frost, Sheriff Summers, and the Okfuskee County Sheriff's Department. The heirs and next of kin of Coale suffered as a result of the Coale's death including: the loss of financial support of contributions of money, grief, companionship, and medical and burial expenses.

51. It is a direct and proximate result of the actions of the Okfuskee County Sheriff's Department that Coale suffered and wrongfully died. As a result of the Sheriff's Department's and/or its employees, servants, agents or contractors negligent, reckless or intentional acts, Jo Kathryn Reavis, administrator of the Estate of James Carl Coale has been substantially damaged in sums in excess of Seventy-Five Thousand Dollars ($75,000.00) for which Plaintiff should recover judgment.

## FIFTH CLAIM FOR RELIEF
*Wrongful Death pursuant to 12 O.S. § 1053 against Frost*

52.     Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) through fifty-one (51), above, with the same force and effect as if fully set forth herein.

53.     Coale, alternatively and at a minimum, died at the hands of a Sheriff's deputy Frost while Frost negligently, recklessly or intentionally handled a firearm that shot and killed Coale. Coale's death was entirely preventable but for the negligent and/or reckless failures experienced by Coale at the hands of the Frost.

54.     Coale suffered immensely and died due to the conduct of Frost. The heirs and next of kin of Coale suffered as a result of the Coale's death including: the loss of financial support of contributions of money, grief, companionship, and medical and burial expenses.

55.     It is a direct and proximate result of the actions of Frost that Coale suffered and wrongfully died. As a result of the Frost's negligent, reckless or intentional acts, Jo Kathryn Reavis, administrator of the Estate of James Carl Coale has been substantially damaged in sums in excess of Seventy-Five Thousand Dollars ($75,000.00) for which Plaintiff should recover judgment.

**SIXTH CLAIM FOR RELIEF**
*Negligent training, hiring, and supervision
against Okfuskee County Sheriff's Department[2]*

56. Jo Kathryn Reavis, Administrator of the Estate of James Carl Coale, alleges and realleges Paragraphs numbered one (1) thorough fifty-five (51), above, with the same force and effect as if fully set forth herein.

57. Upon information and belief, Frost was a confrontational, hot-tempered, antagonistic person which fact was known to the County or by exercise of ordinary care could have been known by it at time of and during his employment. Frost also had a history of prior misconduct and excessive force as an officer before being hired by the Okfuskee County Sheriff's Department.

58. The Sheriff's Department owed a duty of care to Coale to not subject him to its employees who would risk reckless or intentional physical harm against him. The Sheriff's Department also owed a duty of care to Coale to hire, train, and supervise its employees in a manner that would promote safety, ethical action, and responsibility of its employees who interact with the population of Okfuskee County.

59. The Sheriff's Department breached the duty of care to Plaintiff when they hired Frost, failed to effectively train Frost, failed to supervise Frost, and failed to take any necessary steps to ensure that Frost was ready and able to perform his duty in an ethical and safe manner.

60. The actions, inactions, and omissions of the County were the direct and proximate cause of injuries sustained by Coale.

---

[2] Coale's estate presented notice of a claim under the Oklahoma Governmental Tort Claims act to Okfuskee County on or about November 30, 2016. The mandatory ninety (90) day waiting period before denial of a claim is assumed fell on or about March 1, 2017 and has since passed. The County's time for denial of the claim has since passed and their response is deemed as a denial. In that OGTCA notice, specific reference was provided for "negligent … hiring of the deputy."

15

61.As a result of the incident and Frost's and the County's conduct, Coale suffered and ultimately lost his life. Coale's estate and heirs also suffered immensely at the death of Coale. The aforementioned damages are in an amount in excess of $75,000.00.

**WHEREFORE**, based on the foregoing, Jo Kathryn Reavis, on behalf of the Estate of James Carl Coale prays for a judgment of $1,725,000.00 against these Defendants for actual, compensatory and all applicable categories of damages, reasonable attorney's fees, costs of this action and for all other relief allowable according to law.

Date:April 12, 2017

Respectfully submitted,

/s/Carla R. Stinnett
Carla R. Stinnett, OBA No. 19532
Andrew M. Casey, OBA No. 32371
STINNETT LAW
404 East Dewey Avenue, Suite No. 202
Sapulpa, OK 74066
Telephone: (918) 227-1177
Facsimile:  (918) 227-1197
Email: carla@stinnettlaw.com
**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**